UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

THOMAS WILLIAM O'HARA,

          Debtor.

Case No. 24-00151-swd
Chapter 7
Hon. Scott W. Dales

_____/

## MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

## I. INTRODUCTION

*Pro se* chapter 7 debtor Thomas William O'Hara (the "Debtor") recently filed a slew of motions premised in one way or another on either misunderstanding or contempt of the bankruptcy process, including the following:

- Motion to Compel Abandonment of Non-Estate Property Under 11 U.S.C. § 554(b) (ECF No. 298, the "Motion to Compel");
- Debtor's Motion for Clerk Verification of Docket Integrity, Audit Trail Preservation, and Production of Bankruptcy Noticing Center Service Logs (ECF No. 338, the "Audit Motion");
- Debtor's Emergency Motion for Clarification and Enforcement (ECF No. 345, the "Enforcement Motion"); and
- Debtor's Motion to Vacate and Annul Unauthorized Sale and Trustee's Deed Pursuant to Fed. R. Civ. P. 60(b)(4) and Fed. R. Bankr. P. 9024 (ECF No. 346, the "Motion to Vacate").

After reviewing each motion, it appears the court has previously resolved (in earlier orders) most of the issues Mr. O'Hara attempts to address in these recent filings. Regarding any novel issues, the court rejects them as either fanciful or otherwise unsupported. The court also notes that the Debtor has not properly served each motion on interested parties (as the Clerk's several notices

attest). *See e.g.*, ECF Nos. 300, 332, 339, and 347. There is no point in requiring a response from any interested parties, under the circumstances.

## II. THE MOTION TO COMPEL AND THE ENFORCEMENT MOTION

With respect to the Motion to Compel, the court has already (i) declared that all tangible personal property remaining in the real property commonly known as 2820 Division Street, S., Grand Rapids, Michigan (the "Division Street Property"), is either abandoned under 11 U.S.C. § 554 (as to property of the estate) or disposed of under § 725 (as to non-estate property) and (ii) advised Mr. O'Hara that "in his personal capacity and as president of Harvest Energy, [he] may arrange with the new owner of the [Division Street Property] to recover the property abandoned or disposed of pursuant to this Order, as the case may be." Order dated Oct. 22, 2025 (ECF No. 341). The chapter 7 trustee asserts no claim to that property and will not interfere with its retrieval. The entry of that Order resolved the issues Mr. O'Hara re-stated in the Motion to Compel.

The Enforcement Motion, which simply rehashes the Motion to Compel and ignores the court's Order dated Oct. 22, 2025, fares no better.

Therefore, the court will deny both the Motion to Compel and the Enforcement Motion.

## III. THE AUDIT MOTION

In the Audit Motion, the Debtor offers two main points, the first challenging the court's continued mailings to the Division Street Property after the trustee took possession, and the second decrying "Chronological and Entry-Date Irregularities" in the docket.

With respect to the issue of serving the Debtor at the Division Street Property, as the court has noted several times, Mr. O'Hara has only himself to blame for not changing his address of record. *See* Fed. R. Bankr. P. 4002(a)(5) and 7004(b)(9). Indeed, as recently as November 2, 2025, he sent correspondence using that address, suggesting, perhaps, that he has arranged with

the Post Office to forward his mail.  *See, e.g.,* Letter to Clerk of the Court, dated Nov. 2, 2025 (Re: Filing of Correspondence – Notice of Ownership and Demand for Return of Property) (ECF No. 348).

With respect to his docket-related concerns, the court has considered each of Mr. O'Hara's supposed errors and finds no irregularity.  For example, the court entered its Memorandum of Decision and Order dated May 9, 2024 (ECF No. 70) not to justify its conversion of the case to chapter 7, but to address the Debtor's own (untimely) dismissal motion.  The court gave its reasons for converting the case to chapter 7 on the record, and the United States District Court, on appeal, affirmed that decision.[1]

As for the supposed transcript irregularities, one document is a partial transcript (ECF No. 145) and the other is a full transcript (ECF No. 146) of the same hearing.  Both contain the transcriber's certificate of accuracy.  The docket includes both transcripts because Mr. O'Hara, then represented by counsel, requested both.  *See* ECF Nos. 85, 130, and 133.

Regarding the purportedly nefarious post-dated entries indicating adjournments of various hearings, the court regularly memorializes adjournments noted on the record *during* a hearing by making docket entries *after* the hearing. There is nothing irregular about this ordinary housekeeping activity under Fed. R. Bankr. P. 5003(a)(1).  Additionally, Mr. O'Hara does not support other aspects of his prayer for relief with any "particularity" in the motion.  Fed. R. Bankr. P. 9013(b).

In sum, the Audit Motion lacks merit.

---

[1] Mr. O'Hara's appeal from the District Court's judgment, however, remains pending at the United States Court of Appeals for the Sixth Circuit.

IV. THE MOTION TO VACATE

Next, the Motion to Vacate seeks to annul the sale of the Division Street Property based on similarly-imagined procedural and jurisdictional shortcomings the court has previously rejected. *See* Order dated Oct. 22, 2025, at p. 2 (ECF No. 340) ("The Trustee gave ample notice of the proposed sale months ago and, without objection, the court approved the transaction by Order dated June 13, 2025.  Although the Debtor did not object to the sale before the court approved it, he nevertheless timely appealed from the sale order, but later abandoned the appeal.").  In that same Order, which denied the Debtor's Objection and Emergency Motion to Adjourn October 22, 2025 Telephonic Hearing (ECF No. 337), the court rejected the argument that Mr. O'Hara's appeal from Judge Jonker's judgment affirming the court's conversion order divested the bankruptcy court of jurisdiction.  This court, as any other federal court, "always has jurisdiction to determine its own jurisdiction," *United States v. Ruiz*, 536 U.S. 622, 628 (2002), and it has already rejected the jurisdictional challenge to the sale of the Division Street Property.  The court's decisions regarding the proposed sale are now the law of the case.  *See Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) ("'[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

In a mischaracterization now characteristic of his filings, Mr. O'Hara argues that "[o]n October 8, 2025, during a status hearing, the court stated on the record that 'the sale has fallen through.'"  Motion to Vacate at § II, ¶ 4.  Mr. O'Hara's account, however, is blatantly false.  The court's observation that the sale of the Division Street Property has fallen through did not occur during a status conference -- there was no status conference on that date -- but instead in the Order to Show Cause dated Oct. 8, 2025 (ECF No. 314), where the court noted that "the Trustee made a

text entry on the docket stating that she 'has concluded all matters in this estate and prays that this case be closed and the trustee be discharged from office.'"  In that Order to Show Cause, the court merely observed that this docket entry "*suggests* that the proposed sale" of the Division Street Property had "fallen through." Order to Show Cause dated Oct. 8, 2025 at p. 1 (emphasis added). During the return hearing on the Order to Show Cause, the court again recounted that it had "assumed" the sale of the Division Street Property had fallen through.  At no time after the trustee's erroneous docket entry did the court make any definitive finding that the sale fell through.

The court's inference in an Order to Show Cause -- an order that simply scheduled a hearing -- did not affect any substantive rights regarding the sale, and neither did the trustee's erroneous docket entry.  The Bankruptcy Rules prescribe a process for abandoning property that requires that creditors receive notice and an opportunity to be heard.  *See* Fed. R. Bankr. P. 6007.  The trustee did not purport to give notice to all creditors, and her unilateral declaration does not effect any abandonment or change in the status of property.  Indeed, the trustee promptly withdrew the erroneous docket entry and reported that the sale of the Division Street Property closed on October 10, 2025.  *See* Withdrawal of Notice of First Meeting of Creditors Not Held Filed on October 5, 2025 (ECF No. 318); *see also* Report of Sale (ECF No. 334).  During the return hearing on the Order to Show Cause, she explained that she intended to close the first meeting of creditors with a docket entry (even though the Debtor has not fully participated) and mistakenly "clicked" the wrong box on the CM/ECF event screen.  In fact, the court has recognized the trustee's sale of the Division Street Property after issuing the Order to Show Cause.  *See* Order dated October 22, 2025 at p.3 (ECF No. 340) ("given the closing of the sale of the Real Estate on October 10, 2025, there is no proceeding to suspend with respect to the disposition of that property.").

Mr. O'Hara may try to exploit the trustee's inadvertent docket entry as somehow warranting an order unwinding the sale that closed last month, but the harmless error rule (and the law of the case doctrine) require the court to disregard the Debtor's cynical challenge. *See* Fed. R. Bankr. P. 9005; *see also* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

The sale of the Division Street Property stands.

## V. CONCLUSION AND ORDER

The court has considered Mr. O'Hara's other arguments and finds them without merit. Accordingly, it will deny the various motions identified above.

Finally, in light of the series of baseless filings in recent months from Mr. O'Hara, the court's duty requires it to take some remedial measures.

Unlike most litigants, Mr. O'Hara takes an unusually cavalier approach to his obligations under Fed. R. Bankr. P. 9011, which the court repeats here (in relevant part) for his benefit:

> (b) Representations to the Court. By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
> (3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

In addition to reminding Mr. O'Hara about these constraints, the court will impose another modest restriction, also premised on the rules.  For any future motion, pleading, or other paper that he files in this case (or related proceedings) which in whole or in part relies on facts outside the record, he must file an affidavit or solemn declaration under penalty of perjury supporting the relief requested therein.  *See* Fed. R. Civ. P. 43(c); 28 U.S.C. § 1746.

This requirement is not a sanction requiring additional notice (as the rules already require litigants to support their motions and other filings), but a safeguard to deter future unsupported filings. Perhaps consequences to follow under title 18, in addition to sanctions under Fed. R. Bankr. P. 9011, will have a sobering effect on Mr. O'Hara's tendency to make inaccurate and sometimes extravagant factual assertions.  The court may summarily strike any future filing that does not observe this requirement.

NOW, THEREFORE, IT IS HEREBY ORDERED that the following motions are DENIED:

1.  Motion to Compel Abandonment of Non-Estate Property under 11 U.S.C. § 554(b) (ECF No. 298);

2.  Debtor's Motion for Clerk Verification of Docket Integrity, Audit Trail Preservation, and Production of Bankruptcy Noticing Center Service Logs (ECF No. 338);

3.  Debtor's Emergency Motion for Clarification and Enforcement (ECF No. 345); and

4.  Debtor's Motion to Vacate and Annul Unauthorized Sale and Trustee's Deed Pursuant to Fed. R. Civ. P. 60(b)(4) and Fed. R. Bankr. P. 9024 (ECF No. 346).

IT IS FURTHER ORDERED that, after entry of this Order, Thomas William O'Hara shall support any future motion, pleading, or other paper that he files in this case (or related

proceedings), which in whole or in part relies on facts outside the record, with an affidavit or solemn declaration on personal knowledge and under penalty of perjury.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and 9036, and LBR 5005-4 upon Lisa E. Gochá, Esq., the United States Trustee (care of Matthew Cheney, Esq.), Peter Rhoades, Esq., Mr. Thomas William O'Hara (by U.S. Mail per Fed. R. Bankr. P. 7004(b)(9) and the BNC as applicable), and all parties requesting notice of these proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated November 6, 2025**



Scott W. Dales
United States Bankruptcy Judge